## D. N. & E. WALTER & Co. (HOYT, SHEPSTON & SCIARONI) v. UNITED STATES

No. 7867.

Entry Nos. WH 1603; CE 3186; CE 3187.

(Decided August 21, 1950)

Lawrence, Tuttle & Harper (George R. Tuttle and Charles J. Evans of counsel) for the plaintiff.

David N. Edelstein, Assistant Attorney General (Dorothy C. Bennett and Daniel I. Auster, special attorneys), for the defendant.

EKWALL, Judge: These cases, which have been consolidated, involve the dutiable value of jute and wool hooked rugs from China. The question before the court is what constitutes the "time of exportation" of the merchandise to the United States, under section 402 (d) of the Tariff Act of 1930, which defines export value. Counsel have agreed that if the court decides that the time of exportation is 1941, the entered values are correct, but if such time of exportation is found to be 1946, the appraised values are correct. The appraiser adopted the latter date as the basis for his finding of export value. It was further agreed that there was no higher foreign value during the years mentioned.

Said section 402 (d) defines export value and bases such definition upon the market value or the price "at the time of exportation of such merchandise to the United States."

The facts as they appear from the record are substantially as follows:

In the case of reappraisement No. 163450–A, plaintiff purchased the rugs in China in March 1941 at the invoiced prices. They were shipped from Tientsin, China, in July 1941, for transshipment to San Francisco at Kobe, Japan. Due to war conditions, shipment to the United States from Kobe could not be made at that time because the sailing of the vessel on which the rugs were to be shipped to the United

States was canceled and no other vessels of that line were scheduled to depart from Kobe for the United States. They were paid for in 1941. The rugs were thereupon returned to the shipper at Tientsin in the original packages and were stored in Tientsin by the shipper for the plaintiff until 1946, at which time they were shipped to the United States.

In reappraisements 163451–A and 163452–A, the plaintiff purchased the rugs from The Jen Li Company in Tientsin in May 1941, and the invoice covering this merchandise was certified at Shanghai in April 1946. Payment for this merchandise was not made until 1946. The record shows that the delay was due to governmental restrictions on payment and to the fact that the original document had not been negotiated at the time of the outbreak of the war. These rugs were shipped to Shanghai during October 1941 on two different steamers for transshipment to San Francisco on an American steamer of the American President Lines. The American steamship did not call at Shanghai and the other vessels of that line would accept only military cargo. Therefore, the rugs were not shipped to the United States at that time but were stored in Shanghai for account of the plaintiff until the year 1946, when they were shipped to this country. As to these rugs, the copies of the seller's invoices did not reach the plaintiff until 1944, at which time it became known that the rugs were safe after the outbreak of war. Payment therefor was made to the plaintiff in 1946, which payment included interest at 5 per centum per annum on the purchase price, together with warehousing charges.

The question before the court is whether the circumstances surrounding these importations were such as to warrant a departure from the long-established rule that the date of exportation for value purposes under the tariff act is the date of the last sailing of the importing vessel from the country from whence exported. *Sampson et al.* v. *Peaslee*, 61 U. S. 571; *Irvine et al.* v. *Redfield*, 64 U. S. 170; *China & Japan Trading Co., Ltd.* v. *United States*, T. D. 20954, G. A. 4400; *Roessler & Hasslacher Chemical Co.* v. *United States*, 1 Ct. Cust. Appls. 290, T. D. 31353; and *United States* v. *Abell Forwarding Co., Inc.*, 73 Treas. Dec. 1426, Reap. Dec. 4248.

A somewhat similar situation confronted the court in the case reported in Reap. Circ. 30928 involving certain books, pamphlets, and leaflets which were manufactured prior to the beginning of the war in 1914 and were actually exported to the United States on April 22, 1920, approximately 6 years after manufacture. It was there held that the date of exportation under paragraph L of the Tariff Act of 1913 was April 22, 1920, for the reason as there stated:

&ast; &ast; &ast; It is not the date of manufacture nor even the date of purchase that is to determine when the value shall be fixed, but the actual date of exportation which, in this case, was April 22, 1920, approximately six years after manufacture.

However much the good faith of the shippers may appeal to us, we have no jurisdiction to go beyond the letter of the law to afford relief.

A perusal of the cases cited above is persuasive that the courts have consistently held over a considerable period of time that the value of merchandise is to be determined as of the date of actual sailing of a vessel, rather than by documentary evidence of certification of an invoice or of clearance papers, and irrespective of the date upon which merchandise is loaded on board a vessel. In the case at bar, the ship's papers of 1941 were of no value in fixing the date of exportation of the rugs involved for the reason that such date did not represent the voyage which eventually brought the rugs to this country. Hence, the 1946 date fixes the date of exportation for valuation purposes under the statute.

The statute here involved provides no exceptions with respect to the term "at the time of exportation" used therein. That the delay in exporting the rugs here involved was due to war conditions, or that a portion of the merchandise had been paid for in 1941, and an attempt was made to ship the rugs in 1941, are not material facts in determining the time of exportation here.

The case reported in Reap. Circ. 30229, cited by the plaintiff in support of its contention, involved the value of a quantity of Haarlem oil which had originally been shipped 2 years prior to the date of entry, but, due to war conditions, the vessel upon which the oil was laden was turned back because the goods were held contraband by the German Government. Subsequently, the oil was laden on another steamer and arrived in the United States, where it was duly entered. Plaintiff claimed that as the oil was originally shipped 2 years prior to entry, the earlier date constituted the date of exportation for the purposes of valuation. The court, in deciding against this contention, pointed out that the goods did not remain on the first ship until finally landed in this country, in which case, it stated, the delay of the vessel with the goods still on board could not have nullified or changed the date of the original shipment; that the ship not only returned to port, but the merchandise was returned to the custody of the original vendor, and all the papers connected with the attempted exportation were canceled. The court held that it was unable to conclude that the merchandise received and paid for was only in continuation and a part of the same sale and exportation abortively attempted 2 years earlier. The date of exportation was held to be fixed by the date of sailing of the vessel upon which the goods were transported to the United States. We find no merit in the inference drawn by plaintiff herein that had the original sale and purchase persisted and the documents concerned therewith not been surrendered and canceled, as is the case here, the court would have arrived at a different conclusion.

We find upon the instant record that the "time of exportation,"

which is the only issue involved herein, is the date of actual exportation, 1946, and that the values are those found by the appraiser.

Judgment will issue accordingly.