D. N. & E. WALTER & CO. *v.* UNITED STATES (No. 4776)[1]

United States Court of Customs and Patent Appeals, February 8, 1955

, Lawrence, Tuttle & Harper (Charles F. Lawrence, George R. Tuttle, and Frank L. Lawrence of counsel) for appellant.

Warren E. Burger, Assistant Attorney General (Richard E. FitzGibbon and Daniel I. Auster, special attorneys, of counsel), for the United States.

[Oral argument December 10, 1954, by Mr. Tuttle and Mr. Auster]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges

COLE, Judge, delivered the opinion of the court:

Appellant imported a quantity of jute and wool hooked rugs from China, the merchandise being entered in three shipments at the port of San Francisco in April and May of 1946. The proper basis for appraisement, concededly export value, as that value is defined in section 402 (d) of the Tariff Act of 1930,[1] was adopted by the appraiser and, predicated on a time of exportation from China in 1946, the imported rugs were valued. The importer agreed that export value was the proper basis for appraisement of the merchandise, but did not agree with the appraiser's determination that "the time of exportation of such merchandise to the United States," as that phrase appears in said section 204 (d), supra, was in 1946. Instead, it was the importer's position that for valuation purposes the rugs had been exported from China in 1941. Three appeals for reappraisement were therefore taken by the importer with respect to the appraiser's valuation of the aforesaid shipments. These cases, respectively designated as Reappraisement Nos. 163450–A, 163451–A, and 163452–A, were consolidated for trial before a single judge of the United States Customs Court, sitting in reappraisement, who held that the appraised values, based on a time of exportation in 1946, were correct. 25 Cust. Ct. 398, Reap. Dec. 7867. On importer's application for review, the First Division of the Customs Court, Appellate Term, affirmed the judgment of the trial judge, D. N. & E. Walter & Co. (Hoyt, Shepston & Sciaroni) v. United States, 30 Cust. Ct. 602, A. R. D. 18, and the importer has appealed here from that holding.

The material facts of record giving rise to the controversy are not in dispute, and as set forth in the opinion of the appellate division are as follows: "In the case of reappraisement 163450–A, appellant

---

[1] Sec. 402. VALUE.

(d) Export Value.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade; for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(importer) purchased the rugs in China in March 1941. They were shipped from Tientsin, China, in July 1941, and reached Kobe, Japan, where they were to have been transshipped to the United States. Due to war conditions, shipment to the United States could not be made at that time. The sailing of the vessel which was to carry the rugs was canceled, and no other vessels of the shipping line were scheduled to depart from Kobe for the United States. The rugs were thereupon returned to the seller [in China] who stored them in their original packages until 1946, at which time they were shipped to the United States. Although exportation of the merchandise was made in 1946, appellant paid for them in 1941.

"In the case of reappraisements 163451–A and 163452–A, the rugs were purchased in Tientsin, China, in May 1941, and in October of the same year, the merchandise was sent to Shanghai, China, for transshipment to the United States. Due to governmental control under existing war conditions, the rugs were held at Shanghai until 1946, when shipment to the United States was completed. Copies of the seller's invoices reached appellant in 1944, at which time it became known that the rugs were safe after the outbreak of war. Payment for the merchandise was not made until 1946, when appellant (importer) included in the amount the cost of warehousing, plus 5 per centum interest on the purchase price for the period during which the rugs had been held."

On the basis of the foregoing facts, the trial judge and appellate division held that the statutory "time of exportation" in section 402 (d), *supra*, applicable to each shipment of the involved merchandise, was in 1946, that date being the time of the last sailing of the importing vessel from the country of exportation, citing, as controlling the issue, *Sampson et al.* v. *Peaslee*, 61 U. S. 571, *Irvine et al.* v. *Redfield*, 64 U. S. 170, and *Roessler & Hasslacher Chemical Co.* v. *United States*, 1 Ct. Cust. Appls. 290, T. D. 31353.

While agreeing that as a general rule of application it is proper to determine the "time of exportation" of imported merchandise by the date of the last departure of the importing vessel from the country of exportation, the appellant urges with respect to the goods in Reappraisement 163450–A that an exception to such rule is to be made where previously exported goods have, of necessity, been returned to the country of exportation due to stress of weather, war, marine accident, or other similarly unpreventable causes which defeat the plans and intentions of the parties to the transaction. Appellant argues that since it cannot be denied that the merchandise was exported from China in 1941, and returned to the country of exportation only for purposes of safekeeping to assure the completion of that exportation, the later and final movement of the goods from China in

1946 must be regarded as being merely a completion of the interrupted exportation in 1941.

Considering the above contentions of the importer, the case of *Forman* v. *Peaslee*, 9 Fed. Cas. 452, decided in 1857, is in point. In that case, the court was called upon to construe a statute requiring appraisers to determine the market value of imports at the period of exportation to the United States. The facts therein indicated that certain merchandise had been shipped from Wales, in Great Britain, to Liverpool, and there reshipped to the United States. The court held that the transportation of the merchandise coastwise from one British port to another was not an exportation from Great Britain, and that until the exporting vessel had cleared from Liverpool there was no complete act of exportation. The reason for the court's conclusion was based on its belief that until the vessel finally cleared from the country of exportation the merchandise remained under the control of that country and subject to search and seizure thereby.

No citation of authority is deemed necessary to show that the rule developed in the *Forman* case, *supra*, has been one of consistent application by the courts over a long period of years.

While it is clear that the merchandise covered by Reappraisement 163450–A was intended for exportation to the United States in 1941, and the importer made payment therefor in that year, no statutory authority can be found in the provisions of section 402 (d), *supra*, for considering such factors as having any bearing on the establishment of the "time of exportation" of imported merchandise. In applying the provision in section 402 (d), *supra*, i.e., that the export value of imported merchandise "shall be the market value or the price, at the time of exportation of such merchandise to the United States," the courts without qualification have held that such "time of exportation" is to be determined by the date of the actual exportation which finally results in the importation of the goods into the United States.

In *Avakian Bros., Inc.* v. *United States*, 41 C. C. P. A. (Customs) 80, C. A. D. 532, decided June 17, 1953, we had under consideration the date of exportation of certain merchandise from Iran. The goods in that case had been transported overland from Iran, the country of exportation, into Iraq where they were loaded on a vessel for shipment to the United States. After leaving the port in Iraq, the vessel returned to Iran whence it sailed bound for the United States. We decided that the date the merchandise last left the jurisdiction of the country of exportation, Iran, was the date of exportation, holding that while there had been a physical severance of the goods from the country of exportation, the subsequent return of the merchandise to the territorial jurisdiction of the exporting country made the physical severance incomplete, and such act was not finally completed until

the goods passed beyond the control of the exporting country. In reaching this conclusion, we said:

Considering now the decision of the Customs Court in the *Dyas* case [*B. H. Dyas Corp. v. United States*, T. D. 43600, 56 Treas. Dec. 268], and the other similar cases, that Court held that when the merchandise that was once out of the territorial jurisdiction of the exporting country returned to their jurisdiction they were again subject to search and seizure and therefore the exportation was not complete until the goods finally left the jurisdiction of the exporting country. With this view we are in complete agreement. We can readily visualize a case where the goods having left the jurisdiction of the exporting country were returned to that jurisdiction and the government of the exporting country, for one reason or another, seized the goods as a product no longer qualified for export from that country. In such a case, even though this country considered the merchandise as having been exported from that country, the government of that country by its action would have completely nullified the exportation. Therefore, this country would be in the anomalous position of regarding goods as having been exported from a foreign country while that country was actually in control of the goods and refusing to allow them to be carried out of their country. Manifestly, a view that could lead to such a situation should not be adopted by us.

In view of the above, it should be manifest that the exportation from China in 1941 not representing the voyage which brought the rugs to the United States, subsequent events having nullified the legal effect of that exportation, the "time of exportation" in said section 402 (d), *supra*, of the goods covered by Reappraisement 163450–A was in 1946.

Considering now the merchandise covered by Reappraisements 163451–A and 163452–A, it is clear that these rugs were sent from Tientsin to Shanghai in 1941 with the intent that they be transshipped to the United States in that year. While the rugs never physically left China until 1946, appellant, in its brief on appeal, maintained that the exportation was so nearly completed in 1941 that, considered in the light of war conditions then existing, and the manifest intention of the parties to the transaction, the exportation should be considered as having been effective in 1941. During oral argument before this court, the appellant withdrew his advocacy of this view, conceding that the factual situation did not warrant a claim to exportation of these goods in 1941. Accordingly, we find it unnecessary to discuss this phase of the controversy.

The "time of exportation" of each shipment of the involved rugs being in 1946, and the appraised values predicated on such date admittedly being correct, the judgment appealed from is *affirmed*.